SILVER CREEK NAVIGATION & IMPROVEMENT COMPANY *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY.

[43 South., 478.]

NAVIGABLE WATERS. *Obstructions. Equitable remedies. Pleadings.*

A bill in equity to compel the removal of obstructions to the navigation of a stream created by a railroad company is not demurrable if it show that complainant has a special statutory exclusive right for a term of years to navigate the stream and that the defendant has constructed railroad bridges across it in such a way as to needlessly obstruct navigation and had thereby interfered with complainant's enjoyment of its exclusive right.

FROM the chancery court of Yazoo county.

HON. G. GARLAND LYELL, Chancellor.

The appellant, Silver Creek Navigation & Improvement Company, a corporation, was complainant in the court below; the Yazoo & Mississippi Valley Railroad Company, appellee, was defendant there. From a decree sustaining the defendant's demurrer to the bill of complaint and dismissing the bill the complainant appealed to the supreme court.

The complainant's bill showed that it was incorporated in 1884, and by the legislature empowered (Laws of 1884, p. 864, *et seq.*), to deepen and widen the channel of Silver creek in

Yazoo county and to construct locks and dams so as to make the stream navigable; that it was given the sole and exclusive right to navigate the parts of the stream improved, for fifty years; that, after operating for many years, one end of a dike, constructed to increase the volume of water, gave way; that when the means to repair the dike and put the stream again in navigable condition were at hand, complainant was deterred from so doing by the fact that the defendant railroad company had built a railroad across the creek and constructed a bridge in such manner that it was impossible for the complainant to navigate any kind of water craft in the stream; and that if the defendant company should be permitted to maintain its road as its bridges are constructed in several places across the stream, the franchise and water right given to complainant by the legislature would be virtually annulled and its property rights invaded in violation of the constitution of the state. The bill further averred that the legislature, in empowering complainant to deepen and widen the stream had declared the creek a navigable stream; and that it would be easy for the defendant railroad company to place gateways and sluices and drawbridges so as to subserve the rights of the complainant without interfering with the railroad company's operation of its road. The opinion further states the allegations of the bill.

The railroad company demurred because the bill failed to show that Silver creek was a navigable stream at the time the suit was begun; because it failed to show that the complainant had complied with its charter requirements; and because the bill was premature in that the dike had not been restored, and whether or not the bridges of defendant would affect the navigation of the stream could not be positively known until the dike was rebuilt.

It was contended by appellant that "the decree rendered by the chancery court dismissing the bill is violative of art. 1, § 10, of the federal constitution, providing that "no state

shall make or pass any law impairing the obligation of contracts," and also of the fourteenth amendment to the federal constitution, providing that "no state shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States . . . or deny to any person within its jurisdiction the equal protection of the law."

*Hudson & Fox,* for appellant.

The first ground in the demurrer is simply an averment that is not supported by the frank declaration of the bill. The bill alleges that the water is not as navigable now as it was when the levee was in good repair and that it is not in condition to float as large crafts as it did prior to the crevasse in the dike, that it is navigable for small crafts, but is not as much so as before. The whole frame-work of the bill and all of its statements convey the unmistakable belief that the stream of water is navigable now for small boats but not as much so as the appellant would like to use in order that more profit might be derived from its business. The legislature of Mississippi by the act aforesaid in granting its rights to this appellant declared this stream of water to be a navigable one and in the absence of any other fact together with the averments in the bill it is presumed to be a navigable stream and will be considered as such.

The second ground alleged in the demurrer is nothing more nor less than a defense setting up a failure of appellant to perform its part of its obligation to the state in not complying with the charter and that it had not yet become a corporate entity. This is not a valid defense. *Harris* v. *Railroad Company,* 51 Miss., 602; *Grand Gulf Bank* v. *Archer,* 8 Smed. & M., 151; *Bohannon* v. *Biens,* 31 Miss., 355.

The third ground of the demurrer is untenable because the bill alleges that the railroad crosses appellee's rights three different times and that the piling on which it crosses is so contrived that it is impossible to navigate this stream of water.

The exclusive right in this case is a property right, fixed and vested. "The appropriation of water rights is a property right therein and cannot be deprived of this right without his consent, even for a public use without compensation." 30 Ency. Law, 398.

While appellant did not expropriate its right with dollars and cents, still the source of its charter is derived from the sovereign from which all municipal rights emanate, as much so in this case as land grants or any other contract made by the government upon which valuable rights become fixed and are protected by fundamental laws.

In the case of *Copper King Company Limited* v. *Wabash Mining Co.*, 114 Fed., 991, here we find that the property of the Copper King Mine was situated on the natural water course, known as "Dog Creek" and for more than five years it had diverted and appropriated for business and domestic purposes, all the water of said creek and had acquired an *exclusive right* to the use of said water. The Wabash Mining Co. subsequently sank a vertical shaft near the channel of this creek, which diverted the water from the creek and the Copper King Company obtained an injunction restraining it from further diverting this water, and the court in substance holds, "That where a mining company has acquired the *exclusive right* of the use of water of a certain creek in working its mines, another company has not the right in developing its mines by means of a shaft near the creek to cut off and divert the water flowing into it." Where a mine owner, at the time of commencing a shaft, cut off the water flowing into the creek which another mine owner had acquired the exclusive right to use and was cautioned by the latter, against cutting off such water, he was bound with notice of the consequence of his act. In an action to restrain defendant from diverting the water from the creek, which plaintiff had acquired exclusive right to use, the rights of the parties were in dispute and temporary injunction should have been granted." See *Green & Garren River Co.* v. *Ches-*

*apeake R. R. Co.,* 2 L. R. A., 540.   This case is particularly in point for the reason that the appellant contends that it had the exclusive right to the use of this river and that the railroad company had no right to construct a bridge across it that would interfere with its navigability, and the court in dealing with the controversy virtually conceded that if the exclusive right had been given in this case, that the defendant or appellee, railroad company, could not have built the bridge across the river so as to interfere with the rights of the appellant.   See also *Viedahan* v. *Commissioners,* 3 L. R. A. (N. S.), 1126; High on Injunctions, vol. 1, sec. 110; Cooley Const. Lim. (6th ed.), p. 342.

There is no question that an exclusive charter granted to carry on a lawful business, containing provisions for exclusive privileges of value to the grantee, so as to be, when accepted and acted upon by the grantee, an essential part of the transaction moving the grantee to accept it and invest his money on its faith, is *protected* as *a contract* by the federal constitution, art. 1, § 10, and being a valuable franchise or privilege increased in value by the exclusive right, *it is vested property* protected by the fourteenth amendment, and there can be no question of its being property.

If anything is settled by an unbroken course to decisions in federal and state court, it is that an act of incorporation is a contract between the state and incorporators.   All courts are estopped from questioning the doctrine.   The security of property rests upon it, and every successful enterprise is undertaken in the unshaken belief that it will never be forsaken.   This doctrine was forever settled in the great case cited so often and through so many years—the *Dartmouth College case.*

For our court to permit the railroad company to continue to occupy the water right of appellant would be nothing more nor less than for the state to give the exclusive right to appellant to navigate the waters in controversy and then the court by its decree allow the railroad company to put in a line of

boats in opposition to appellant and destroy its business. The injury is accomplished just as much by stopping the navigation as it is by putting a line of boats in opposition to appellant and reducing the freight rates to such an extent as that it would destroy competition; in other words, if appellee can by a cheaper method prevent appellant from hauling freight by water, by obstruction and dams and piling, it is better it should do so than to fight appellee with a more costly means of competing with it until the "survival of the fittest."

*Mayes & Longstreet,* and *Chas. N. Burch,* for appellee.

We do not care to take issue with the appellant as to its ultimate right, if it shall show improvement and navigation of that part of Silver creek over which the appellee's bridges extend, to cause the appellee to remove obstructions to proper navigation; nor do we care to take issue on the question of the validity of the grant made to appellant by the state legislature. But we do contend that the appellant's bill is insufficient in averment, and that it fails to state the fact most essential and prerequisite to any right in the appellant to file the bill to abate the bridges as constituting a nuisance, namely, that they affect and injure appellant's rights.

A close inspection of its charter will show that the appellant is not given the sole and exclusive right to use and navigate the stream in its entirety; but is granted merely the right to use and navigate only such part thereof as it may improve. Now, the bill does not recite where the appellee's bridges were located, whether on any part of the stream which was improved by appellee, or not. Unless the appellant is able to aver that these bridges were located where they interfered with the use by appellant of that portion of the stream improved by it, or which would be improved by it, the appellant can have no private right which is vitiated by the operation of the bridges. We submit to the court, in illustration of our proposition, that a navigation company might have the right to complain of

obstructions which worked injury to private rights because of bridges built over water it proposed to navigate, when the navigation company would have absolutely no right to complain of the presence of any bridges over the same stream at its head waters where, under no circumstances and with no improvement could the stream be made navigable in any sense.

The bill does not aver that the appellee's bridges are now being operated to any hurt or damage to appellant. Nor is it averred anywhere that these bridges and their mode of construction have at any time interfered with any sort of navigation of the stream attempted by appellant. Nor does the bill allege that it is the intention of the appellant ever to improve the stream under its charter.

If the contention of the appellant should be sustained, this court would be forced to instruct the railroad company to remove its bridges and piers from the stream, and then, after this tremendous expense was visited on the railroad company engaged as a common carrier in a great public enterprise and operating a public highway, it would be entirely optional with the appellant whether or not it ever improved that part of the stream in order to get the right to use it.

We admit that if the stream at the point where each bridge is located shall ever be improved and rendered navigable during the period of the charter by appellant, it may become incumbent upon appellee to remove the obstructions or to construct proper drawbridges. But the bill does not comply with any of the essential prerequisites to a bill seeking a mandatory injunction. Injunctions of this sort are granted with the greatest reluctance, and only when it is clear that they are essential to the effectuation of the right of the complainant.

In conclusion we state as follows:

1. Notwithstanding a bridge built improperly across a navigable stream may be a public nuisance, which may be abated at the instance of the public authorities, yet it may not be deemed to be a nuisance and abated at the instance of a private com-

plainant unless special, present existing injury and damage are being inflicted on the private person or the private right.

2. In seeking an injunction in this case to compel the railroad company to remove three bridges, it is absolutely incumbent on the complainant to aver a right and authority and exclusive use over that portion of the stream where the bridges are located.

3. The complainant must show, not that it intends in the future possibly to do certain things which will render it possible to navigate certain portions of the stream, but in order to obtain radical action it must aver that all the acts prerequisite to an exercise of its rights have been performed by it; that it has done whatever was incumbent upon it to do, and that the obstruction is working injury to an existing condition and not to a possible condition which may exist at some time in the future in event of contingencies which may never happen.

Argued orally by *J. C. Longstreet,* for appellee.

Mayes, J., delivered the opinion of the court.

The demurrer in this case should have been overruled. The bill states a perfect cause of action. The legislature of the state had authorized and empowered the Silver Creek Navigation Company "to remove all obstructions from, and deepen and widen the channel of Silver creek, in the county of Yazoo; to cut and remove timber, logs, trees, and other obstructions on the banks or in the bed of said creek, which in any way interfered with the navigation thereof; and to build and construct all necessary locks and dams so as to make said stream, or any portion thereof, suitable and fit for the purpose of navigation, whether by steamboats or other water craft; and in consideration of the time, labor, and money to be expended by them in improving the said stream aforesaid, said corporation shall have the sole and exclusive right to use and navigate said stream, or such part thereof as it may improve, for the period of fifty years, and to charge tolls or freight for all persons or

property transported by it, and to navigate the said stream with such water craft as it may see proper to use." It is alleged in the bill that the Silver Creek Navigation Company under this act was duly incorporated and organized, and the amount paid in as required by the act before it began business, which had been used in improving the stream. Subsequently it had set afloat in Silver creek several steamboats, and had operated them up and down the creek for a great many years. It is further alleged that after operating under this charter for many years, on account of defective construction, one end of the dike which it had built for the purpose of increasing the volume of water in the stream gave way, and since that time it had been unable to navigate as large craft in its business as it desired. It is further alleged that it now has the means with which to repair the dike and put the creek in good navigable condition for the operation of its business, and desires to do it, but is deterred by the fact that without the knowledge and consent of appellant, the Yazoo & Mississippi Valley Railroad Company has built a railroad across this creek at three different places, and that the road is so constructed at the place where it crosses the creek that it is impossible for appellant to navigate any kind of water craft in the creek; that the railroad of defendant is constructed of dirt and pilings, so arranged as to be an absolute bar to navigation in the creek, and, if appellee is permitted to maintain its road as now constructed, the franchise and water right granted to the appellant by the legislature will be annulled, and its property rights taken away and destroyed. The demurrer admits all these facts alleged in the bill; that is to say, that the legislature has granted to appellant the exclusive right to use and navigate the stream; that it has spent a large sum of money in improving the stream, and that it is now ready to begin its operations again, but, on account of the obstructions placed in the stream by the railroad company, an absolute bar to navigation is made

by the obstructions so placed by the railroad company. The bill states a good case on its face.

*Reversed and remanded, with sixty days' leave to answer after mandate is filed.*